(July 16, 1992)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KEVIN FULLER, Appellant.—Harvey, J. Appeal from a judgment of the County Court of Broome County (Monserrate, J.), rendered December 21, 1989, upon two verdicts convicting defendant of the crimes of sexual abuse in the first degree (two counts), sodomy in the first degree, rape in the first degree (four counts), attempted sodomy in the first degree, assault in the second degree and coercion in the first degree.

Defendant was charged in two separate indictments with various counts of rape, sodomy, sexual abuse, assault and coercion as the result of acts perpetrated on two different women in 1986 and 1989. On January 28, 1989, the victim in case No. 60281 encountered defendant and codefendant Richard Moore as she was walking to a friend's house at approximately 10:00 P.M. in the City of Binghamton, Broome County. The two men drove by and offered to give her a lift. After the victim accepted and got into the car, she was repeatedly raped and sodomized by Moore at knifepoint. At the same time defendant also participated in a number of acts of sexual gratification. The victim was eventually released and defendant and Moore were apprehended.

Following these arrests, photographs of the persons arrested for that crime, including defendant, were published in a local newspaper. The victim in case No. 60602, who had been attacked by four men on May 31, 1986, recognized defendant

as one of the men who had assaulted her at that time. Defendant and three other men had offered her a ride. The victim accepted the offer but the driver then drove to a secluded spot where the victim was raped and sodomized. Although she reported the incident to the police, the victim made no identification of any of the perpetrators of the crime at that time even though defendant's picture was apparently included in photo arrays she viewed. Nevertheless, the victim later recognized defendant from the newspaper photograph. A lineup was arranged following the identification and the victim identified defendant.

Thereafter, with respect to case No. 60281, defendant was convicted in August 1989, following a jury trial, of two counts of sexual abuse in the first degree, two counts of rape in the first degree and sodomy in the first degree. The jury trial for case No. 60602 was held in December 1989 and defendant was convicted of two counts of rape in the first degree, one count of attempted sodomy in the first degree, one count of assault in the second degree and one count of coercion in the first degree. Defendant was later sentenced on both verdicts at the same sentencing hearing. In case No. 60281, defendant was sentenced as a second felony offender to prison terms of 3 to 6 years on each of the convictions for sexual abuse in the first degree, 12½ to 25 years for the conviction for sodomy in the first degree and 7½ to 15 years on each conviction for rape in the first degree. The sentences for the sexual abuse and sodomy convictions were to be served concurrently, while the rape convictions were to be served concurrently to each other but consecutively to the other sentences. In case No. 60602, defendant was sentenced as a second felony offender to prison terms of 7½ to 15 years on each of the two convictions of rape in the first degree and also for the conviction of attempted sodomy in the first degree. He was sentenced to 3½ to 7 years for the counts of assault in the second degree and coercion in the first degree. The sentences on the two rape convictions were to be served concurrently with each other, while the sentences on the sexual abuse, sodomy and assault convictions were to be served concurrently to each other but consecutively to the sentences for the rape convictions. Defendant now appeals.

Initially, we reject defendant's contention that County Court did not have jurisdiction over all the crimes charged against him in case No. 60281. The crux of defendant's argument is his claim that there was no jurisdiction because there was allegedly no conclusive proof that the charged crimes actually

occurred in Broome County. Trial evidence indicated that defendant and Moore drove between Broome County and Pennsylvania and the victim was not absolutely sure about locations. Nevertheless, in *People v Moore* (170 AD2d 847, *lv denied* 77 NY2d 998) this court rejected a similar argument from defendant's codefendant by holding that jurisdiction over the count of the indictment charging Moore with rape in the first degree was valid even though that rape actually occurred in Pennsylvania *(supra)*. We found that because the element of forcible compulsion occurred in New York, it established a causal relationship between the New York behavior and the Pennsylvania rape which satisfied the requirements of CPL 20.20 and established jurisdiction. Similarly, in this case each of the crimes defendant was convicted of (rape in the first degree, sexual abuse in the first degree [two counts] and sodomy in the first degree) include the same element of forcible compulsion *(see,* Penal Law § 130.00 [8]; §§ 130.35, 130.50, 130.65). Given that the trial proof established a causal link between the New York aggression and any acts occurring in Pennsylvania, defendant's arguments on this point must fail.

Next, we conclude that County Court did not err in failing to suppress the use of the lineup identification and the in-court identification of defendant by the victim in case No. 60602. Notably, " '[t]he issue involved in ascertaining the validity of a lineup identification concerns "undue suggestiveness" which is determined by considering the totality of the circumstances surrounding the lineup' " *(People v Chalmers,* 163 AD2d 528, *lv denied* 77 NY2d 876, quoting *People v Rodriguez,* 124 AD2d 611, 612). Defendant's claim of undue suggestiveness here is premised upon his argument that the other members of the lineup ("fillers") in which he was identified by the victim were not sufficiently similar to defendant in height and weight.* We note, however, that there is no requirement that lineup fillers be nearly identical to the defendant in appearance *(see, People v Peterson,* 183 AD2d 450; *People v Chalmers, supra)*. It is adequate if "there is a sufficient degree of resemblance between the fillers and the defendant" *(People v Allah,* 158 AD2d 605, 606, *lv denied* 76 NY2d 730).

In this case defendant, who is 5 feet 9 inches and 150

---

* Although the photograph of the line up originally introduced at trial was apparently misplaced, the parties have agreed that a photograph of the lineup introduced at the suppression hearing is sufficiently similar to the original trial exhibit so that a sufficient review can be undertaken.

pounds, was placed in a lineup with fillers who were 5 feet 5 inches and 180 pounds, 5 feet 9 inches and 163 pounds, 5 feet 10 inches and 170 pounds and 6 feet 1 inches and 225 pounds. A review of the lineup photograph reveals that all the fillers had coloring and facial hair similar to defendant. While it could be argued that the 5 feet 5 inches and 6 feet 1 inches fillers might not have been adequate choices, this does not invalidate the lineup in light of the existence of the other two sufficient fillers *(see, People v Johnson,* 122 AD2d 812, *lv denied* 68 NY2d 915; *People v Norris,* 122 AD2d 82, 84, *lv denied* 68 NY2d 916). Notably, while the victim did state at trial that her identification of defendant was based, in part, on his slim build, she also testified at trial and, more significantly at the suppression hearing, that she recognized defendant based on his eyes, eyebrows, cheekbones and facial hair.

Defendant's remaining challenges to the reliability of the lineup identification lack merit. The victim's prior inability to identify defendant in a photo array goes to the weight to be given her identification, not its admissibility *(see, People v Cruz,* 167 AD2d 306, *lv denied* 77 NY2d 959). Further, the fact that the victim saw defendant's picture in a local paper with respect to an unrelated case before the lineup does not affect defendant's due process rights, especially because there is no evidence that the police were involved with placement of the photo in the paper *(see, People v Darnell,* 146 AD2d 583, 583-584, *lv denied* 73 NY2d 976; *People v Pauley,* 125 AD2d 341, 342, *lv denied* 69 NY2d 1008). It should also be noted that the victim's suppression hearing testimony describing the ample opportunity she had to view defendant during the commission of the charged crimes further supported the reliability of her identification. Viewed in its totality, it is our view that the totality of this evidence belies defendant's claim of undue suggestiveness.

Finally, we have examined defendant's claim that the sentences imposed for the various crimes of which he was convicted in both cases were harsh and excessive and find this argument to be devoid of merit. Sentencing is in the sound discretion of the sentencing court and we will not disturb its disposition absent a clear abuse of discretion or extraordinary circumstances *(see, People v Kenny,* 175 AD2d 404, 407, *lv denied* 78 NY2d 1012). Here, although defendant contends that he should receive more lenient treatment because he was, for the most part, convicted on the basis of accessorial liability, we note that, of all the sentences imposed by County Court, he was only given the harshest sentences for the crimes

in which he was the principal, while the sentences on the other convictions were for less than the maximum exposure allowed for those crimes. Given these facts, the heinous nature of the multitude of crimes for which defendant was convicted (see, *People v Moore,* 170 AD2d 847, 849, *supra)* and defendant's past criminal record, we find nothing improper in the sentences imposed by County Court.

Mikoll, J. P., Yesawich Jr., Mercure and Crew III, JJ., concur. Ordered that the judgment is affirmed.